```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                         15 CR 611 (AJN)

BENJAMIN WEY,

            Defendant.

------------------------------x
                                       New York, N.Y.
                                       November 6, 2015
                                       1:10 p.m.

Before:

                  HON. ALISON J. NATHAN,

                                       District Judge

                       APPEARANCES

PREET BHARARA,
     United States Attorney for the
     Southern District of New York
SARAH E. McCALLUM
MICHAEL FERRARA
     Assistant United States Attorney

HAYNES AND BOONE LLP
     Attorneys for Defendant
DAVID MARK SIEGAL
JOSEPH LAWLOR
```

1                THE DEPUTY CLERK:  U.S. v. Benjamin Wey.
2                Parties, please state your names for the record,
3    starting with the government.
4                MS. McCALLUM:  Good afternoon, your Honor.  Sarah
5    McCallum and Michael Ferrara, for the government.  And with us
6    at counsel table is Paralegal Specialist Stephen Prifti.
7                THE COURT:  Good afternoon to the three of you.
8                For the defendant?
9                MR. SIEGAL:  Good afternoon, your Honor.  David
10   Siegal, for Mr. Wey, who's standing right next to me.  I'm with
11   the law firm of Haynes and Boone.  And my colleague, Joseph
12   Lawlor, is standing on the end.
13               THE COURT:  Good afternoon to the three of you.
14   Please be seated.
15               We are here for a status and scheduling conference in
16   this matter.  Why don't we begin, Ms. McCallum, with a summary
17   of where we are and what the proposal for the schedule moving
18   forward is?
19               MS. McCALLUM:  Certainly, your Honor.  The bulk of
20   discovery has --
21               THE COURT:  Could you pull up the mic, please?
22               MS. McCALLUM:  Certainly.
23               The bulk of discovery has been produced.  There is a
24   little bit of outstanding discovery we expect to get out in the
25   next week or so.  I know that the Court, last time we were

1  here, had suggested that at this point, we would be in a
2  position to set a motion schedule and a trial date.  I think
3  defense counsel, understandably, is going to request more time
4  to review the very voluminous discovery that's been made before
5  identifying motions.  And I understand, and we've discussed
6  with himself, that he's going to propose about a month -- that
7  we all come back to court in about a month to discuss the
8  schedule at that point.  I think the government would accede to
9  that motion.
10            THE COURT:  What's the volume of material?
11            MS. McCALLUM:  It is very voluminous.  It's a hard
12  drive of about a terabyte of data from the U.S. Attorney's
13  Office, there's an SEC database of about three terabytes.  In
14  addition, there were computer searches that were -- or
15  electronic search warrants that were executed.  Those materials
16  have been produced as well.  So it's very voluminous, and we
17  are getting an index from the SEC of the production that they
18  have as well for defense counsel.
19            So this is an unusually big --
20            THE COURT:  You said the bulk of discovery has been
21  produced, with the remainder in a week.  When was the bulk of
22  discovery produced?
23            MS. McCALLUM:  It was, I think, October 14th, most of
24  the discovery was produced.  The SEC database was produced a
25  little bit after that.

1    THE COURT:  Well, go ahead, Mr. Siegal.

2    MR. SIEGAL:  I just want to give your Honor --

3    THE COURT:  It's been previewed, but why don't you go
4 ahead.

5    MR. SIEGAL:  I just wanted to give your Honor a little
6 sense of what we're talking about here in terms of the sheer
7 volume of material, and this is not meant as a criticism of the
8 government.

9    THE COURT:  I ask you to pull up the mic, please.

10    MR. SIEGAL:  Nothing that I say here is meant as a
11 criticism of the government at all in terms of their production
12 of materials to us.  It's just that the amount of material is
13 so voluminous, that we have not yet been able to crack it, and
14 I will give you a sense of why.

15    So, as Ms. McCallum was reporting, there are basically
16 three or four large tranches of materials, and I will just
17 focus on one large tranche, which is a three-terabyte hard
18 drive we provided to the government for them to copy, certain
19 of the discovery materials, which includes part -- in large
20 part, the SEC's discovery, which in and of itself, is somewhere
21 between two and a half and 3 million documents.  That's on the
22 order of a full hard drive of three terabytes or 3,000
23 gigabytes of data.

24    For -- just to give you a sense of what that means,
25 the government had our three-terabyte drive, and it took a week

just to copy the files onto it. I'm not talking about time that it took us to get the drive to the government and them to get it back to us, I'm saying the drives were whirring for a week just to copy the data. We have received it. It's so large, that were we to try to host that much data externally with some third-party company, it would run on the order of $30,000 a month just to host it. I'm not talking about review time resources. We're trying to avoid doing something like that.

We made some attempts, based on the way the data is in our possession, to find a way to cut through it and put to the side stuff we don't need to deal with or that might be duplicative, but, quite frankly, we don't have enough information to do that yet. One of the things we're hoping to be able to do is when we get the SEC's index of the material, maybe that will help us cut through to find a way to more manageably look at this material.

But, also, I think it's important for the Court to understand that part of our motions in this case are going to involve discovery motions, and one of the things we need to know is in addition to what we have, what we don't have, because we're going to want to be able to ask for things that we think we're entitled to that haven't been produced among what's been given to us.

So what I would ask, under the circumstances, is it's

1   going to take us at least two weeks just to get the data

2   loaded, to begin looking at it, and we hope to be able to do

3   that with the SEC's index. So I would say to your Honor,

4   really, I'd be shooting in the dark if I were going to give

5   your Honor a schedule today. Hopefully, we'll be in a better

6   position in December to give your Honor a better sense of the

7   schedule.

8       THE COURT: All right. Well, you've persuaded me that

9   there's an unusually large amount of material, and I understand

10  the need to review it. Frankly, there are two ways to proceed.

11  Even setting aside my normal practice of setting a trial date,

12  and I won't do that since that's the joint request, we could

13  set a motion calendar -- you tell me how far out you want,

14  knowing the volume of stuff that you have to do, and then you

15  develop it, and just get done what you need to get done in that

16  time, or as you're requesting, we come back in a month and do

17  that.

18      And my guess is, if we come back in a month and do

19  that, we'll simply be adding a month to whatever it is that you

20  would have proposed. So the human heart works on deadlines,

21  which is why in order to keep things moving forward and to

22  ensure a speedy trial, I'd like to get people on a schedule. I

23  work on a schedule, other people work on a schedule. But I am

24  persuaded, just the fact technologically -- it's a kind of

25  physical fact, but the fact of loading the material even to

1    assess it for a determination of how long it will take you to
2    get through it, you've persuaded me, if that's the request, to
3    come back in a month and then set a schedule, if that's what
4    you want to do.
5            MR. SIEGAL:  Yes, your Honor.  And I don't know if it
6    works for your Honor's schedule, but we would propose jointly
7    the 11th, which is a Friday of December, to come back.
8            THE COURT:  It looks like I could do the 11th, in the
9    afternoon at 4:00 p.m. on the 11th.
10           MR. SIEGAL:  That's fine with me, your Honor.
11           THE COURT:  Okay.  Ms. McCallum?
12           MS. McCALLUM:  Your Honor, there is another matter
13   that the parties just want to bring to your attention.
14           THE COURT:  Just is that okay with the government?
15           MS. McCALLUM:  Oh, yes, of course.
16           THE COURT:  Let me just ask, I want to think about a
17   few calendar things, the 10th is more open for me.  Anyone have
18   any problem with the 10th?
19           MR. SIEGAL:  Just checking, your Honor, but I don't
20   think so.
21           MS. McCALLUM:  No problem for the government.
22           MR. SIEGAL:  Yes, that's fine.
23           THE COURT:  All right.  Let me look at a few calendar
24   things.  And I presume for the moment, it will be the 11th at
25   4:00 p.m., but I'll put out an order either confirming that or

1     picking a time for the 10th.  Okay?

2             MR. SIEGAL:  And the defendant waives speedy trial

3     until then, your Honor.

4             THE COURT:  Okay.  And, Ms. McCallum, I'll take your

5     request in a moment, but I assume the government moves for

6     exclusion of time?

7             MS. McCALLUM:  Absolutely, your Honor.

8             THE COURT:  I find that the ends of justice served by

9     granting an exclusion from speedy trial computations for the

10    period from today's date through December 11th, 2015, outweigh

11    the interests of the public and the defendant in a speedy trial

12    as this time is necessary for the completion of the voluminous

13    discovery related to the matter and an opportunity for the

14    defendant to review that voluminous discovery.

15            All right.

16            MS. McCALLUM:  Your Honor, the other matter pertains

17    to the bail conditions for the defendant.  The government,

18    pretrial, and Mr. Siegal have been discussing a proposed

19    modification to Mr. Wey's bail conditions that would lift the

20    curfew requirement that exists right now.  We understand that

21    is a redundant requirement in an instance like this one where

22    the defendant is on GPS monitoring, which he is, he's got a

23    bracelet, so I think the parties jointly request that the bail

24    conditions be modified to lift the curfew.

25            THE COURT:  All right.  In light of the underwritten

1  request, and the fact of GPS monitoring, and the compliance to
2  date, I see no reason not to grant that request.  So bail will
3  be modified to lift the curfew.  All other conditions of
4  release will continue to apply.
5          MR. SIEGAL:  Thank you, your Honor.
6          THE COURT:  Anything else to take up?
7          MS. McCALLUM:  Nothing from the government, your
8  Honor.
9          THE COURT: All right.  Thank you.  We're adjourned.
10          (Adjourned)