UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

   – v. – :

BENJAMIN WEY, : DECLARATION
   a/k/a "Benjamin Wei,"
   a/k/a "Tianbing Wei," and : 15 Cr. 611 (AJN)
SEREF DOGAN ERBEK,
   a/k/a "Dogan Erbek," :

      Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Matthew F. Komar, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been personally involved in the investigation of this case.

2. In January 2012, I was the agent principally responsible for the investigation of this case, and I led the FBI's efforts at that time to secure and execute search warrants for the offices of New York Global Group, Inc. (the "NYGG Premises") and the apartment of Benjamin Wey and his wife (the "Wey Apartment").

3. Attached as Exhibit 1 hereto is a redacted version of the application that I submitted on or about January 24, 2012 to search the NYGG Premises (the "NYGG Application"). The application includes my 97-page affidavit (the "NYGG Affidavit") setting forth probable cause to believe that defendant Benjamin Wey had committed the crimes specified therein, as well as probable cause to believe that evidence, fruits, and instrumentalities of those crimes would be found at the NYGG Premises.

4.  On or about January 24, 2012, the Honorable Michael H. Dolinger, United States Magistrate Judge for the Southern District of New York, signed and authorized the warrant to search the NYGG Premises. A copy of that warrant (the "NYGG Warrant") is attached as Exhibit 2 hereto.

5.  On or about January 23, 2012, in anticipation of the NYGG Warrant's authorization, I finalized an Operations Order Form (the "Ops Form") for dissemination to fellow agents who would be involved in the search of the NYGG Premises. A copy of the Ops Form, which summarizes the investigation and the proposed search of the NYGG Premises, is attached as Exhibit 3 hereto.

6.  On or about January 24, 2012, following Judge Dolinger's authorization of the search of the NYGG Premises, I, along with the Assistant U.S. Attorney then assigned to this case (the "AUSA") met with members of the FBI team assigned to execute the NYGG Premises warrant. Either before or during the briefing, I circulated copies of the Ops Form to the members of the search team. I also shared a copy of the NYGG Application, which included the 97-page NYGG Affidavit, with the agent who would be leading the search of the NYGG Premises, and told other members of the team that the NYGG Application was available for their review. During the January 24 briefing, the AUSA and I described the crimes for which Wey was being investigated, summarized the scope of Wey's suspected criminal activity, and summarized the nature of the evidence sought.

7.  The ensuing search of the NYGG Premises began at approximately 9:10 a.m. on January 25, 2012, and ended at approximately 2:45 p.m. I was present throughout the search, as was Wey.

8. All agents who participated in the search of the NYGG Premises were provided with copies of Exhibit B to the NYGG Warrant, which is the list of names of individuals and entities identified in the NYGG Affidavit and associated with the investigation. Several agents, including myself and the search team leader, also had copies of the entire NYGG Warrant in hand during the execution of the search. I had a copy of the NYGG Affidavit with me as well.

9. For much of the search of the NYGG Premises, I stationed myself in the reception area so that I would be available to answer questions from members of the search team. I did, in fact, answer questions. For example, I recall an agent asking me whether certain documents bearing the "NYGG" logo should be seized. I recall responding that the subject documents could be left on the premises because they did not, on closer inspection, appear to have relevance to our investigation. In the end, we seized approximately 4,500 pages of documents from the NYGG Premises.

10. The other items seized from the NYGG Premises were cellular telephones and computer evidence, including thumb drives. Some of the electronic devices found at the NYGG Premises were imaged on-site, while others were seized for off-site imaging by the FBI's Computer Analysis Response Team ("CART"). All electronic devices and computer evidence that were seized were taken with a view to conducting later searches for any electronic versions of documents and records described in items 1 through 6 and 8 through 12 of Exhibit A to the NYGG Warrant, as limited by the list of names supplied in Exhibit B to the NYGG Warrant.

11. Among the agents involved in the search of the NYGG Premises was Special Agent Keith Garwood. I have reviewed Agent Garwood's January 25, 2012 application for a warrant to search the Wey Apartment (the "Wey Apartment Application"), a redacted copy of which is attached as Exhibit 4 hereto. (Exhibit 4 does not include the NYGG Affidavit, which

was submitted to Judge Dolinger as an exhibit to the Wey Apartment Application.) As reflected in the Wey Apartment Application, Agent Garwood learned from two NYGG employees with whom he spoke during the search of the NYGG Premises that evidence relevant to the investigation was likely to be found at the Wey Apartment.

12. On or about January 25, 2012, Judge Dolinger signed and authorized a warrant for the search of the Wey Apartment. A copy of that warrant (the "Wey Apartment Warrant") is attached as Exhibit 5 hereto.

13. The ensuing search of the Wey Apartment began at approximately 4:30 p.m. on January 25, 2016. I, along with most of the other agents involved in searching the NYGG Premises, personally participated in the search of the Wey Apartment. Again, I made myself available to answer questions agents had about whether to seize certain documents. I answered some such questions. I also helped with arrangements to ensure that certain potentially privileged documents were retained in the possession of counsel for Wey's wife, who was present at the Wey Apartment during at least part of the search. In the end, approximately 4,000 documents were seized from the Wey Apartment.

14. The other items seized from the Wey Apartment were cellular telephones and computer evidence, including thumb drives. I believe that most, if not all, of the electronic devices seized at the Wey Apartment were taken away for off-site imaging by CART. All electronic devices and computer evidence that were seized were taken with a view to conducting later searches for electronic versions of any documents and records described in items 1 through 6 and 8 through 12 of Exhibit A to the Wey Apartment Warrant, as limited by the list of names supplied in Exhibit B to the Wey Apartment Warrant.

15. Within approximately one or two weeks from the dates of the NYGG Premises and Wey Apartment searches, CART was able to image all electronic devices and computer evidence that had been seized. Around that time, in or about February 2012, I personally arranged for the return of the NYGG computers to NYGG's counsel, and the return of the Wey Apartment computers to Wey's counsel. Thumb drives and personal electronic devices that had not already been returned were retained by the FBI as evidence, but, also in or about February 2012, I provided defense counsel with electronic images of those retained devices.[1]

16. Later in 2012, the U.S. Attorney's Office provided to counsel for Wey and NYGG scans of the hard copy documents seized from both the NYGG Premises and the Wey Apartment.

17. In the months that followed the imaging of the devices seized, I, in consultation with Mr. Massey, arranged for the assignment of approximately three "wall" FBI agents (the "Wall FBI Team") who would be tasked with identifying potentially privileged files and records among the imaged data and segregating them from review by the investigating agents assigned to the matter (including myself).

18. To assist the Wall FBI Team in identifying potentially privileged material, Mr. Massey and I provided the Wall FBI Team with a list of attorney names that had been compiled based on, among other things, information supplied by NYGG's counsel in May and June of 2012 concerning identities of legal counsel who allegedly represented or had at some point represented Wey, NYGG, and/or others associated with the investigation. That list was over 9

---

[1] One of the devices seized from the Wey Apartment, a locked iPhone, was password protected and could not be opened at the time. I understand from speaking to others that agents secured a second warrant for that iPhone in or about October 2015, after learning that it could be unlocked, and that the contents of that iPhone have since been produced to the defense as well.

pages long and included approximately 115 names just of attorneys and firms purportedly connected to Wey, Wey's wife (herself an attorney named on the list), and NYGG.

19. In or about June 2012, the Wall FBI Team began its review.

20. In or about the fall of 2012, I learned that the Wall FBI Team had finally completed its identification and segregation of files identified as potentially privileged. Those files were extracted from the general electronic files to be reviewed, and neither I nor (as far as I know) anyone from the investigative team on this case has reviewed those extracted files.

21. In or about late 2012, I began the process of reviewing the remaining electronic materials for evidence falling within the parameters of the NYGG Warrant and the Wey Apartment Warrant—that is, electronic documents and records of the kinds described in Exhibit A to the NYGG Warrant and the Wey Apartment Warrant which concerned any of the entities or individuals in Exhibit B to those warrants. I had difficulty conducting key word searches in the electronic program used to review the materials, and began a file-by-file review of some of the thumb drive evidence to try to identify responsive materials. I did not progress very far with this search.

22. In or about February 2013, I was transferred to a position at FBI headquarters in the District of Columbia. Special Agent Thomas McGuire took over as case agent for this matter at that time.

DATED: July 8, 2016
New York, New York

Respectfully submitted,

Matthew F. Komar
Special Agent
Federal Bureau of Investigation