UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

BENJAMIN WEY and
SEREF DOĞAN ERBEK,

Defendants.

Crim. Action No.: 15-CR-00611 (AJN)

**BENJAMIN WEY'S MEMORANDUM OF LAW
IN OPPOSITION TO NASDAQ, INC'S MOTION TO QUASH**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................................. 1

Argument ..................................................................................................................................... 3

I.     NASDAQ'S REQUEST TO QUASH ON THE GROUNDS OF ABSOLUTE
       IMMUNITY SHOULD BE REJECTED ............................................................................. 3

II.    NASDAQ'S ASSERTIONS OF PRIVILEGE SHOULD BE REJECTED ........................... 5

       A.     The Law Enforcement Privilege Does Not Apply ...................................................... 5

       B.     The Investigative Privilege Does Not Apply ............................................................. 9

       C.     The Deliberative Process Privilege Does Not Apply ................................................ 10

III.   THE SUBPOENA SATISFIES THE *NIXON* REQUIREMENTS ....................................... 13

Conclusion ................................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltel Communications, LLC v. Dejordy*,
 675 F.3d 1100 (8th Cir. 2012) ...........................................................5

*Apex Oil Co. v. Dimauro*,
 110 F.R.D. 490 (S.D.N.Y. 1985) ........................................................9

*Barbara v. New York Stock Exchange, Inc.*,
 99 F.3d 49 (2d Cir. 1996) ...................................................................5

*In re Barclays Liquidity Cross & High Frequency Trading Litigation*,
 126 F. Supp. 3d 342, 355 (S.D.N.Y. 2015)..................................3, 4, 5

*Baron Oil Co. v. Downie*,
 873 F.2d 67 (4th Cir. 1989) ................................................................5

*Brady v. Maryland*,
 373 U.S. 83 (1963).............................................................................12

*In re City of New York*,
 607 F.3d 923 (2d Cir. 2010)...............................................................6

*Cuccaro v. Sec'y of Labor*,
 770 F.2d 355 (3d Cir. 1985)..............................................................11

*D'Alessio v. New York Stock Exchange, Inc.*,
 258 F.3d 93 (2d Cir. 2001)..................................................................3

*In re Dep't of Investigation of the City of N.Y.*,
 856 F.2d 481 (2d Cir. 1988)........................................................6, 7, 9

*Dexter v. Depository Trust & Clearing Corp.*,
 406 F. Supp. 2d 260 (S.D.N.Y. 2005).............................................3, 4

*DGM Investments, Inc. v. New York Futures Exchange, Inc.*,
 224 F.R.D. 133 (S.D.N.Y. 2004) ....................................................9, 10

*DL Capital Grp., LLC. v. Nasdaq Stock Mkt., Inc.*,
 409 F.3d 93 (2d Cir. 2005)..................................................................4

*DOI v. Klamath Water Users Protective Ass'n*,
 532 U.S. 1 (2001)..............................................................................10

*Dudman Commc'ns Corp. v. Dep't of the Air Force*,
  815 F.2d 1565 (D.C. Cir. 1987) ..................................................................11

*EPA v. Gen. Elec. Co.*,
  197 F.3d 592 (2d Cir. 1999)........................................................................5

*Floyd v. City of N.Y.*,
  739 F. Supp. 2d 376 (S.D.N.Y. 2010)..........................................................7

*Fox News Network, LLC v. U.S. Dep't of Treasury*,
  911 F. Supp. 2d 261 (S.D.N.Y. 2012)...................................................10, 11

*Giglio v. United States*,
  405 U.S. 150 (1972)..................................................................................12

*Grand Cent. P'ship., Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999)......................................................................11

*MacNamara v. City of N.Y.*,
  249 F.R.D. 70 (S.D.N.Y. 2008) ...........................................................6, 8, 12

*Micillo v. Liddle & Robinson LLP*,
  15-CV-6141, 2016 U.S. Dist. LEXIS 67247 (S.D.N.Y. May 23, 2016) ...................7, 8, 9, 12

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982)....................................................................................4

*Ross v. Bolton*,
  106 F.R.D. 22 (S.D.N.Y. 1985) ..................................................................10

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997)....................................................................12

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.*,
  637 F.3d 112 (2d Cir. 2011)........................................................................5

*In re United States Dep't of Homeland Sec.*,
  06-20330, 2006 U.S. App. LEXIS 16976 (5th Cir. May 8, 2006)...........................6

*United States v. Nachamie*,
  91 F. Supp. 2d 552 (S.D.N.Y. 2000).............................................................13

*United States v. Nixon*,
  418 U.S. 683 (1974)...................................................................1, 4, 13, 15

*United States v. Orena*,
  883 F. Supp. 849 (E.D.N.Y. 1995) ..........................................................6, 7, 9

**Statutes**

5 U.S.C. § 552........................................................................................................11

18 U.S.C. § 3500....................................................................................................12

Fed. R. Crim. P. 17 ........................................................................................ *passim*

**Other Authorities**

NASDAQ Initial Listing Guide ...............................................................................8

Law360: Reality Check: Criminal Actions Against Chinese Cos.? .............................................15

Defendant Benjamin Wey respectfully submits this memorandum of law in opposition to third-party NASDAQ, Inc.'s ("NASDAQ") motion to quash the Fed. R. Crim. P. 17 ("Rule 17") subpoena issued pursuant to this Court's *Ex Parte* Order for Immediate Production Pursuant to Rule 17 dated December 15, 2016 (the "December 2016 Order").

## PRELIMINARY STATEMENT

In its December 2016 Order, this Court granted Mr. Wey's *ex parte* motion for the issuance of a Rule 17(c) subpoena to NASDAQ (the "*Ex Parte* Motion"), ordering the issuance of a subpoena based on Mr. Wey's showing, pursuant to *United States v. Nixon*, 418 U.S. 683 (1974), that the requested materials were relevant, admissible and specifically identified in connection with Mr. Wey's trial defense in this criminal case.[1]  By his subpoena, Mr. Wey seeks limited documentary materials from NASDAQ to prepare a defense against the Government's allegation that he perpetrated a scheme to defraud in connection with NASDAQ's 300 round-lot shareholder listing requirement.  The Government alleges that while no rule actually existed excluding gifted shares from counting toward the 300 round-lot shareholder requirement, Mr. Wey nonetheless deceived NASDAQ by gifting shares to meet the requirement.  Given the allegations in the Indictment and the Government's case theory (as articulated repeatedly both before and after indictment), there can be little doubt that NASDAQ witness testimony will be central to the Government's case in chief, and thus that Mr. Wey is entitled to contest that testimony, which it intends to do with the benefit of the requested documents.

As the Court is aware, NASDAQ has previously provided the Government with certain external communications between NASDAQ officials and outside counsel for Deer Consumer

---

[1]  While not reprinted here for purposes of preserving the confidentiality of his defense, Mr. Wey discussed the facts and law underlying his request for a Rule 17(c) subpoena from NASDAQ at length at pages 20 through 26 of his Memorandum Of Law In Support Of Defendant Benjamin Wey's Renewed *Ex Parte* Motion For The Issuance Of Rule 17(c) Subpoenas, filed December 7, 2016.

Products, Inc. ("Deer") and SmartHeat, Inc. ("SmartHeat"), together with limited records of related internal NASDAQ communications (which the Government in turn provided to the defense). The additional materials requested by the Rule 17(c) subpoena at issue seeks to complete the record of NASDAQ's communications regarding this discrete issue regarding Deer and SmartHeat (and one additional company, Cleantech Innovations, Inc. ("Cleantech"), collectively, the "Issuers"), to support and prepare its defense that NASDAQ was not intentionally deceived by Mr. Wey.

NASDAQ does not seriously contest (nor could it) the merits of Mr. Wey's defense strategy or his need for the materials sought. Rather, NASDAQ seeks to prevent the defense from accessing these vital documents by claiming those materials are somehow shielded by various doctrines of absolute immunity, law enforcement privilege, investigative privilege, and/or deliberative process privilege. Each of these arguments fails. Absolute immunity protects certain government actors from civil liability, and has no application to subpoenas *duces tecum* in a criminal proceeding issued to private entities. Similarly, the law enforcement privilege protects certain *types* of investigative information from a law enforcement investigation, and NASDAQ nowhere asserts (nor could it) that it is or was criminally investigating the Issuers or Mr. Wey (or even acting in concert with a law enforcement investigation at the time). Rather, the records sought by the Rule 17(c) subpoena relate to NASDAQ's routine administrative review of issuer listing applications. Similarly, the investigative privilege also only protects files concerning investigation into unlawful behavior, and then, only from *civil litigation discovery* mechanisms. Again, this is a criminal case, Mr. Wey has a core right to obtain factual materials relevant to his criminal defense, and the files sought are not investigative in nature.

Finally, NASDAQ's attempted reliance on a "deliberative process" privilege fails as well, because such a privilege does not shield production in a criminal proceeding, and does not apply to the documents sought here, which were not relied on during any policy making effort by a government agency.  Accordingly, NASDAQ's motion to quash should be denied, and NASDAQ should be compelled to promptly produce all documents responsive to the subpoena.

## ARGUMENT

## I.

## NASDAQ'S REQUEST TO QUASH ON THE GROUNDS OF ABSOLUTE IMMUNITY SHOULD BE REJECTED

NASDAQ first seeks to avoid production of the subpoenaed materials by asserting it enjoys "absolute immunity."  But NASDAQ enjoys no such immunity from Mr. Wey's subpoena, because "absolute immunity" does not provide a shield to third party subpoenas in a criminal proceeding.  Rather, absolute immunity provides certain government and quasi-government actors with "*immunity from private damages suits*" when acting within their official capacity.  *In re Barclays Liquidity Cross & High Frequency Trading Litigation*, 126 F. Supp. 3d 342, 355 (S.D.N.Y. 2015) (emphasis added).  Mr. Wey's subpoena does not constitute a lawsuit against NASDAQ, and thus, the notion of absolute immunity does not apply to this context.  Accordingly, NASDAQ cannot satisfy its burden of establishing any right to immunity.  *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 104 (2d Cir. 2001) (NASDAQ bears the "burden of establishing that it is entitled to immunity.").

It is well-established that absolute immunity provides protection "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions."  *Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 262 (S.D.N.Y. 2005) (internal quotations and citations omitted).  Although courts sometimes dismiss suits *against* entities such

as NASD/FINRA and NASDAQ on the basis of absolute immunity, *see id.* at 264 (complaint against National Association of Securities Dealers dismissed), NASDAQ's argument that this immunity could somehow shield it from a third-party subpoena in this criminal proceeding is unsupported by the law.[2]

In fact, in *Nixon v. Fitzgerald*, the Supreme Court noted that absolute immunity only applies to the defense of civil litigation, and held that "absolute immunity merely precludes *a particular private remedy* for alleged misconduct in order to advance compelling public ends." 457 U.S. 731, 758 (1982) (emphasis added). Specifically, the Supreme Court held that absolute immunity – even with respect to the President of the United States – does not extend to criminal proceedings, because courts must continue "to vindicate the public interest in an ongoing criminal prosecution." *Id.* at 754, 754 n.37 (linking absolute immunity to civil damages remedy).

NASDAQ also ignores *United States v. Nixon*, 418 U.S. 683, 707 (1974), where the Supreme Court held that:

> To read the Art. II powers of the President as providing an absolute privilege as against a subpoena essential to enforcement of criminal statutes on no more than a generalized claim of the public interest in confidentiality of nonmilitary and nondiplomatic discussions would upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Art. III.

In *Nixon*, the Supreme Court held that a Rule 17(c) subpoena is proper where it is (i) relevant; (ii) admissible; and (iii) specific. *Id.* at 698. In reaching this holding, the Supreme Court took into full account the Executive Branch's privilege and immunity arguments. Here, NASDAQ effectively asks this Court to confer upon NASDAQ greater immunity from subpoena in a

---

[2]   In each of the cases cited by NASDAQ, the absolute immunity defense is invoked to dismiss civil claims brought against the governmental or regulatory entity. *See, e.g.*, *DL Capital Grp., LLC. v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93 (2d Cir. 2005) (affirming dismissal of claims against NASDAQ); *Barclays*, 126 F. Supp. 3d 342 (dismissing civil claims against exchanges).

criminal case than afforded the President of the United States.  NASDAQ cites absolutely no authority for this proposition.[3]  Thus, NASDAQ has failed to show that it is entitled to this immunity of "rare and exceptional character," and its motion to quash should be denied.  *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011).

## II.

## <u>NASDAQ'S ASSERTIONS OF PRIVILEGE SHOULD BE REJECTED</u>

NASDAQ appears to conflate two separate but related privileges – the "law enforcement privilege" and the "investigative privilege" – neither of which justify depriving Mr. Wey of access to the subpoenaed materials, for myriad reasons.

### A.     The Law Enforcement Privilege Does Not Apply

The law enforcement privilege does not apply here because the requests at issue do not seek documents relating to law enforcement techniques, confidential sources, or any law enforcement investigation.  Rather, the documents sought by the subpoena are routine communications by NASDAQ regulatory staff in the context of their administrative review of applications for listing on a stock exchange.

---

[3]     NASDAQ quotes *Barclays*, 126 F. Supp. 3d at 355 – a civil damages lawsuit – out of context to suggest the immunity doctrine is meant to spare it from "burdens of litigation, including discovery."  The *Barclays* Court was stating that, when immunity does shield an entity from a civil lawsuit, such a determination should be "resolved at the earliest possible stage," to prevent needless discovery.  *Id.* at 356.  *Barclays* does not hold that absolute immunity shields entities from all discovery *in addition to* defense of civil lawsuits.  NASDAQ's reliance on *X-Men Sec., Inc. v. Pataki*, suffers from the same infirmity. 196 F.3d 56, 65 (2d Cir. 1999).

Moreover, NASDAQ cites a slew of irrelevant cases arising from the tribal and sovereign immunity context which provide no support for NASDAQ's argument because: (i) those immunities do not apply to criminal subpoenas, *see Alltel Communications*, *LLC v. Dejordy*, 675 F.3d 1100, 1104 (8th Cir. 2012) (tribal immunity does not spare tribes from responding to subpoenas in criminal proceedings); *EPA v. Gen. Elec. Co.*, 197 F.3d 592, 599 (2d Cir. 1999) (Administrative Procedure Act "allows the enforcement of a non-party subpoena" against the government, despite sovereign immunity); *Baron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) (same); and (ii) NASDAQ is neither a tribe nor a sovereign.  *See Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 59 (2d Cir. 1996) ("[a]s a private corporation, the [New York Stock] Exchange does not share in the SEC's sovereign immunity").

The law enforcement privilege may be invoked "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  *In re Dep't of Investigation of the City of N.Y. ("In Re DOI")*, 856 F.2d 481, 484 (2d Cir. 1988).  Further, the party claiming law enforcement privilege must "make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials, and that this burden must be discharged by presenting those facts that are the essential elements of the privileged relationship and not by mere conclusory or *ipse dixit* assertions."  *MacNamara v. City of N.Y.,* 249 F.R.D. 70, 85 (S.D.N.Y. 2008) (internal citations omitted); *see also In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) ("The party asserting law enforcement privilege bears the burden of showing that the privilege indeed applies to the documents at issue.").

The law enforcement privilege is inapplicable here because it only applies to *investigative documents* in *a criminal or quasi-criminal investigation*, and NASDAQ does not allege that the documents sought reflect any such law enforcement investigation.  *See In re United States Dep't of Homeland Sec*., 06-20330, 2006 U.S. App. LEXIS 16976, at \*12-14 (5th Cir. May 8, 2006).  The two cases cited by NASDAQ that apply the law enforcement privilege, *In re DOI*, 856 F.2d 481, and *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995), make this clear.  In *DOI*, the Second Circuit found that the key factor in applying the law enforcement privilege was that the investigation at issue was "integrat[ed] . . . with that of DOI and the United States Attorney" and the "DOI staff advised the Commission on appropriate policies and procedures, gave it access to confidential investigative files and shared with it information from sources."  856 F.2d at 485.  In *Orena*, similarly, the Court found that the law enforcement privilege could

shield certain aspects of the FBI's investigation from discovery by an alleged mob boss, including "the names or addresses of law enforcement officers."  883 F. Supp. at 868.

Here, by contrast, NASDAQ was not involved in any sort of criminal investigation of the Issuers, nor was it cooperating with the U.S. Attorneys' Office in any criminal investigation during the creation of the documents sought by the subpoena – because no USAO investigation existed at that time.  The subpoena seeks records and communications relating to the round-lot shareholder listing requirement for two or three stocks over discrete periods of time in 2008, 2009 and 2010, when the Issuers were applying for exchange listing – long before any USAO investigation.  NASDAQ has not claimed (nor could it) that it was conducting or participating in a law enforcement investigation into these entities at that time, much less that any such investigation by NASDAQ is continuing presently.  (It would be surprising indeed to learn that these entities were subject to a criminal-type investigation by NASDAQ during the period covered by the subpoena, given that NASDAQ saw fit to grant listing to each of the companies in question on its exchange.)  Accordingly, the documents sought are not protected by the law enforcement privilege.  *See Floyd v. City of N.Y.*, 739 F. Supp. 2d 376, 380 (S.D.N.Y. 2010) ("[I]t should be clear that the focus of the law enforcement privilege is to protect information related to investigations."); *see also Micillo v. Liddle & Robinson LLP*, 15-CV-6141, 2016 U.S. Dist. LEXIS 67247, at *14-21 (S.D.N.Y. May 23, 2016) (application of law enforcement privilege where no law enforcement techniques, confidential informant information, or witness safety issues were implicated, "would be an unprecedented (and, in the Court's view, an unwarranted) expansion of the privilege").

Even if NASDAQ were able to meet its burden of showing that these are investigative documents that relate to an ongoing law enforcement investigation by NASDAQ – which it

cannot – it has wholly failed to meet its burden of showing harm.  Apart from conclusory

assertions that the disclosure of responsive documents will result in a parade of horribles,

NASDAQ fails to make any credible showing that any of these harms are likely to occur.  *Cf.*

*MacNamara*, 249 F.R.D. at 85-87 (in order to make threshold showing harm, government had to

submit detailed affidavit from police chief outlining the specific issues in each document).  The

subpoena at bar requests "correspondence and records sent or received by Keely Walter, William

Slattery, or Andrew Hall relating to, interpreting, or applying NASDAQ's 300 round-lot

shareholder requirement, with respect to the listing applications" of Deer, SmartHeat and

Cleantech, during specified time periods – the time frame of each respective listing application.

The evaluation of a listing application does not require any particular law enforcement technique

or procedure, any confidential informants, or any secrecy as to identity of the staff completing

the review.[4]  In fact, NASDAQ readily discloses its listing application process, admits that its

information is derived from publically available sources and the applicant's paperwork, and

directly communicates with the applicant through individual staff.  *See* NASDAQ Initial Listing

Guide, *available at* https://listingcenter.NASDAQ.com/assets/initialguide.pdf.

Further, NASDAQ has already produced certain internal and external communications to

the Government (which were then produced to the defense).  The defense is simply seeking

additional documents on the same topic: NASDAQ's internal application review process for

these Issuers.  These materials could not possibly raise any of the concerns animating this

privilege.  In the unlikely event specific documents might expose any sensitive confidential

informant communication or some law enforcement technique, NASDAQ should be required to

---

[4]   Indeed, the identities of the relevant staff members have already been revealed to the defense by the
Government, and have been included expressly in the subpoena itself as a parameter by which the scope of the
subpoena was voluntarily limited by Mr. Wey in his *Ex Parte* Motion.  To the extent NASDAQ is attempting to
raise a privacy concern about those already public staff identities, the appropriate remedy, if any, would be a
protective order, not withholding discovery altogether.  *See Micillo*, 2016 U.S. Dist. LEXIS 67247, at *18-19.

make a specific showing – *in camera* if necessary – with respect to any such particular materials

on a document by document basis.   Otherwise, the Court should reject this claim as well.

**B.    The Investigative Privilege Does Not Apply**

NASDAQ may not invoke the "investigative privilege" because NASDAQ can only point

to that privilege's invocation in the context of civil discovery requests.   NASDAQ's cases make

clear that the investigative privilege has been "recognized by the courts in protecting civil as well

as criminal law-enforcement investigatory files *from civil discovery*."  *DGM Investments, Inc. v.*

*New York Futures Exchange, Inc.*, 224 F.R.D. 133 (S.D.N.Y. 2004) (emphasis added); *see also*

*Apex Oil Co. v. Dimauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985) (privilege protecting

investigatory materials in possession of the New York Mercantile Exchange applies to "civil

discovery").[5]   NASDAQ has provided no support for the proposition that the investigative

privilege can serve to quash a criminal Rule 17(c) subpoena, and this argument too should thus

be rejected.  In any event, the sort of blanket "chilling" argument offered by NASDAQ was

rejected in *Micillo* where the court determined that such *ipse dixit* assertions are insufficient, and,

instead, the movant must show the files for which protection is sought would reveal, *e.g.,*

"undercover or confidential informants whose identity might be compromised, or one involving

confidential law enforcement surveillance techniques or procedures."  2016 U.S. Dist. LEXIS

67247, at *19-21.

In any event, Mr. Wey does not seek investigative files.  Each of the cases cited by

NASDAQ relates to materials from actual *investigations* into potentially unlawful conduct. *See,*

*e.g., DGM Investments, Inc.*, 224 F.R.D. at 138 (qualified investigative privilege may shield from

civil discovery "investigatory materials related to an ongoing disciplinary proceeding").  As

---

[5]      The only privilege cases NASDAQ cites for preventing *criminal* discovery are *In re DOI* and *Orena*, each of
which applied the law enforcement privilege, not the investigative privilege.  As discussed above, neither case
suggests the materials sought here should be withheld from the defense.

discussed above, the subpoena at issue here seeks materials relating to administrative evaluation of listing applications – not investigations of wrongdoing – and NASDAQ has not shown that the materials at issue would reveal any investigative activities or results.

Finally, even in those civil cases where the investigative privilege is applied, it can be overcome by a showing of necessity.  *See Ross v. Bolton*, 106 F.R.D. 22, 25 (S.D.N.Y. 1985). Given the importance of the documents at issue to a key element of the Government's fraud theory and the fact that NASDAQ is the only entity in possession of its internal communications regarding the listing applications for these Issuers, disclosure would be compelled even if this privilege applied.  *See id*. (necessity shown where information "is not available from any other source"); *see also DGM Investments, Inc.*, 224 F.R.D. at 142 ("A party's need for information that is both central to the party's claims or defenses and available from no other source can outweigh the public interest in the protecting an investigation conducted by a self-regulating industry.").

**C.**     **The Deliberative Process Privilege Does Not Apply**

NASDAQ also cannot satisfy its burden of showing any "deliberative process" privilege to shield it from compliance with the subpoena.  *See Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 270 (S.D.N.Y. 2012) (agency has burden of establishing privilege).  The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated . . . to enhance the quality of agency decisions."  *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

The deliberative process privilege is inapplicable for several reasons. *First*, NASDAQ cites no instance in which this privilege was successfully asserted to block criminal discovery, and thus, it is inapplicable to Mr. Wey's Rule 17(c) subpoena.[6]

*Second*, even if the deliberative process privilege were applicable in a criminal proceeding, the documents sought are not related to the formulation of policy or decision-making by a government agency[7] as required by the privilege. *See Fox News Network*, 911 F. Supp. 2d at 271-72. NASDAQ has the burden of showing that each document it seeks to withhold on the basis of the deliberative-process privilege "relate[s] to the process by which policies are formulated" and "must actually identify and explain the role that a given document has played in the decision-making process." *Id*. at 272. The documents the defense seeks via the subpoena do not relate to any policy making by a government agency. Instead they are the sort of "purely factual material" that are "not covered by the deliberative process privilege." *Id*. The documents sought are relevant to show what NASDAQ's staff knew and what they were actually told regarding the satisfaction of NASDAQ's round-lot shareholder listing requirement by the Issuers. It is highly unlikely that the requested materials will relate in any way to policy making by a government agency – but, in any event, NASDAQ has failed to provide the Court with the documents and explanations of the role each document played in the formulation of government policy, so this claim too should be rejected. Indeed, if in fact the documents at issue *do* relate to policy making – *i.e.*, if NASDAQ was discussing in 2008, 2009 or 2010 the creation of a new policy relating to the propriety of counting gifted shares – then the defense's need for the

---

[6]   The cases seem to reflect that this privilege is generally asserted in response to a FOIA request under 5 U.S.C. § 552. *See, e.g., Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987); *Cuccaro v. Sec'y of Labor*, 770 F.2d 355, 357-59 (3d Cir. 1985).

[7]   As a threshold matter, NASDAQ has not cited a single source to support application of this privilege beyond actual governmental agencies. *See Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999).

documents would be even more pronounced.  Such documents would tend to further establish that NASDAQ could not have been deceived, and that Mr. Wey could not have possessed fraudulent intent, because *no policy yet existed*, and NASDAQ knew that, in the context of the very Issuer's listing applications at the core of this case.  That is, if NASDAQ was engaged in policy-making at that time, Mr. Wey's defense is further buttressed, and he is entitled to know those facts.

*Third*, if this privilege could apply to the instant subpoena – and it cannot – the factors the Court must take into account weigh heavily against application of that privilege: (i) the relevance of the evidence, (ii) the availability of other evidence, (iii) the seriousness of the litigation, (iv) the role of the government, and (v) the possibility of future timidity by government employees.  *See In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997).  As previously demonstrated, the evidence sought by the subpoena is highly relevant to Mr. Wey's defense in this case; the communications in question are unavailable from any other source[8]; the freedom and liberty of Mr. Wey is at stake; and the timidity of government employees should not be a concern, because the defense simply seeks documents bearing on whether non-government NASDAQ employees were actually deceived in any way by Mr. Wey or anyone purportedly acting on his behalf.[9]

---

[8]    If NASDAQ is determined to be a government entity for the purposes of the immunity and privileges it asserts in this motion, then it will be obligated to produce the requested documents (and likely more), pursuant to 18 U.S.C. § 3500 (the Jencks Act), and, among other things, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

[9]    For these same reasons, even if the law enforcement, investigative and/or deliberative process privileges were applicable -- and they are not -- Mr. Wey's compelling need for the documents outweighs any possible benefits of nondisclosure.  *See MacNamara*, 249 F.R.D. at 79 (these privileges are qualified and can be overcome by demonstration of compelling need); *see also Micillo*, 2016 U.S. Dist. LEXIS 67247, at *19-21 n.4.

### III.

### THE SUBPOENA SATISFIES THE *NIXON* REQUIREMENTS

As noted above, Mr. Wey's subpoena meets the relevancy, admissibility, and specificity requirements under *United States v. Nixon,* 418 U.S. 683.[10]  Indeed, this Court has already determined that Mr. Wey satisfied all three elements after briefing and due consideration.  *See* December 2016 Order.

The Indictment emphasizes, in a separately titled section, that Mr. Wey's alleged scheme to defraud included a "deception" on NASDAQ "to gain listing."  (*See* Indictment (Doc. No. 2) at ¶¶ 15-17)  Management of the Issuers sought listing on a NASDAQ exchange.  (*Id.*  ¶ 15)  According to the Indictment, Mr. Wey allegedly sought (indirectly, via the Issuers) to circumvent NASDAQ's listing requirements through a "ruse" of gifting shares to friends and family in order to fulfill NASDAQ's 300 round-lot shareholder requirement.   (*Id.* ¶ 17)  The supposed point of this alleged "ruse" was to "have the effect of increasing market interest and liquidity in the Issuers' securities."  (*Id.*  ¶ 15)

However, as the Government in this case has already acknowledged, no rule actually existed (now or then) excluding gifted shares from the round lot shareholder count, and select NASDAQ communications already produced by the Government show that the relevant NASDAQ staff identified in the subpoena were actually aware that shareholders of the Issuers had received their stock as gifts.  The documents Mr. Wey seeks from NASDAQ regarding its review of the Issuers' compliance with the round lot shareholder requirement are directly

---

[10]   Given the fact that this Court has already ruled that Mr. Wey's application meets the *Nixon* requirements, for the purposes of this motion, Mr. Wey will not unnecessarily reargue whether *Nixon* is the proper standard to apply to the subpoena at issue.  However, Mr. Wey's position is *Nixon* should not apply to a criminal defendant seeking information from third parties pursuant to Rule 17(c), but rather the more lenient standard articulated in *United States v. Nachamie*, 91 F. Supp. 2d 552, 562-63 (S.D.N.Y. 2000), and its progeny, should apply.

relevant to Mr. Wey's defense that no one at NASDAQ was misled or defrauded about anything, and that Mr. Wey lacked fraudulent intent.

NASDAQ baldly asserts that "Nasdaq's consideration and handling of the Issuers' listing applications may be part of the narrative of this case, but there is no reason to think that Wey's guilt or innocence could turn on the details of Nasdaq's decision-making." (NASDAQ Mem., p. 11) With due respect, NASDAQ misreads the Indictment, and indeed the Government would undoubtedly be surprised to learn that deception of NASDAQ does not constitute a core piece of the Government's case against Mr. Wey. In any event, the Indictment clearly alleges an attempt to defraud and/or mislead NASDAQ, and the defense has every right to assume that the Government will seek to prove that the deceptive conduct included a "ruse" to evade NASDAQ's listing requirements. Accordingly, if in fact the NASDAQ personnel who were charged with reviewing the Issuers' listing applications were on actual notice of the fact that shareholders were the recipients of gifted shares, or if those staff actually knew no "rule" prohibiting such gifting existed, or if those staff exercised NASDAQ's discretion to approve listing applications despite such knowledge, any or all of those facts would tend to undermine the Government's required elements of proof of deception and fraudulent intent. Thus, the requested communications are clearly relevant to Mr. Wey's defense on the merits.

NASDAQ also claims that the subpoena is "unreasonable" because "much" of the material Mr. Wey seeks is "otherwise procurable through other means," because certain documents are supposedly "already in the possession of the Issuers," and because "Wey evidently controls the Issuers." (NASDAQ Mem., p. 11) This is absurd. *First*, among the materials the subpoena commands NASDAQ to produce are internal NASDAQ communications. It is axiomatic that those communications are not available from the Issuers or any source other

than NASDAQ itself.  *Second*, even regarding the external communications between NASDAQ and the Issuers, that the Indictment *alleges* Mr. Wey controls the Issuers does not make it so, and NASDAQ provides no support for the notion that Mr. Wey could somehow secure documents from three companies currently based solely in China.  *See* Reality Check: Criminal Actions Against Chinese Cos.?, *available at* https://www.law360.com/articles/278824/reality-check-criminal-actions-against-chinese-cos (because the United States does not have a Mutual Legal Assistance Treaty with China, "[i]f the company and all of its documents are located in China, even upon issuing the subpoena, '[t]here is little that can be done if a [Chinese] corporation, especially one with tenuous contacts with the United States, declines to produce documents.'" (alterations in original)).  *Third*, NASDAQ provides no argument for why it is less reasonable to seek these documents from NASDAQ than from the Issuers in China (or why the defense would not be permitted to seek the correspondence from both NASDAQ *and* the Issuers, if it so chose, *e.g.*, to ensure completeness).[11]

In short, as the Court has already determined, the subpoena is reasonable in its limited and narrowly tailored scope.  Its requests are cabined to three specifically identified custodians (support for which was provided in the *Ex Parte* Motion), relate directly to the round-lot shareholder listing requirement at issue in the case and emphasized in the Indictment, and are limited to three short time frames, one for each of the relevant Issuers.  There is simply no reason to permit NASDAQ to avoid the subpoena under the *Nixon* standard.

---

[11]    Indeed, at the outset of its brief, NASDAQ concedes that it can readily produce external communications between NASDAQ and the Issuers.  (NASDAQ Mem., p. 3 n.1)

**CONCLUSION**

Based on the foregoing, this Court should deny NASDAQ's motion to quash in its entirety, and compel NASDAQ to produce documents responsive to Mr. Wey's Rule 17(c) subpoena forthwith, together with such other and further relief as it deems just and proper.

Dated:  March 1, 2017

HAYNES and BOONE, LLP
*Attorneys for Defendant Benjamin Wey*


By:  s/ David Siegal
    David Siegal
    Joseph Lawlor
    Sherry Xia
    30 Rockefeller Plaza
    26th Floor
    New York, New York 10112
    Telephone: (212) 659-4995
    david.siegal@haynesboone.com

    Barry F. McNeil
    2323 Victory Avenue, Suite 700
    Dallas, Texas 75219-7672
    Telephone: (214)-651-5580
    barry.mcneil@haynesboone.com