UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN WEY,<br>    a/k/a "Benjamin Wei,"<br>    a/k/a "Tianbing Wei," *and*<br><br>SEREF DOGAN ERBEK,<br>    a/k/a "Dogan Erbek,"<br><br>                    *Defendants.* | No. 15-CR-611 (AJN) |

## REPLY IN SUPPORT OF MOTION TO QUASH
## THIRD-PARTY SUBPOENA DIRECTED TO NASDAQ, INC.

Defendant Benjamin Wey, in his opposition to Nasdaq's motion to quash his third-party subpoena, identifies no case enforcing such a subpoena that targeted a regulatory entity's core internal deliberative materials, in either a criminal or civil case. And Nasdaq is aware of none. That is because Wey's demand for Nasdaq's internal documents is both novel and troubling.

Wey's arguments, if accepted, would permit litigants across the country to intrude upon the operations of government agencies and self-regulatory organizations ("SROs") like Nasdaq, merely by asserting that documents *might* be useful to them. Wey's subpoena, if enforced, would make Nasdaq's "files fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of [Nasdaq's] ongoing, statutorily governed work." *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (denying motions to compel an SRO to comply with subpoenas of its internal investigative files). But Nasdaq's absolute immunity as an SRO, along with the deliberative

1

process and investigative privileges, protect the "strong public interest in maintaining the integrity of effective industry self-regulation" against impairment by subpoenas like this one. *Id.*

Wey's subpoena also independently fails the test of Federal Rule of Criminal Procedure 17(c), primarily because he demands material that is not necessary for his defense. Nasdaq offered to produce to Wey the complete file of its communications to and from the Issuers, while seeking to protect only its purely internal documents revealing deliberations and investigative methods. Although Wey claims that those additional documents may help him dispute the government's contention that he deceived Nasdaq, Opp. 1, he simultaneously proclaims that he already has the information and evidence he would need to disprove that allegation, Opp. 13, and he admits that he seeks only "additional," cumulative material "on the same topic," Opp. 8. *See* Fed. R. Evid. 403 (providing for the exclusion of "needlessly … cumulative evidence").

For these reasons and the reasons set forth below, the subpoena should be quashed.

## ARGUMENT

**A.     Nasdaq's Well-Recognized Absolute Immunity Bars Wey's Subpoena**

Wey cannot dispute that Nasdaq, as an SRO, is entitled to absolute immunity, given the multiple precedents in the Second Circuit and other courts recognizing that immunity. Instead, Wey argues that Nasdaq's well-established immunity does not apply here because (1) absolute immunity provides SROs with immunity from suit, and a "subpoena does not constitute a lawsuit," Opp. 3, and (2) absolute immunity does not apply in criminal proceedings, Opp. 3–5. Both premises are wrong. If Wey were correct, SRO immunity would hardly be *absolute* at all.

**1.** Second Circuit precedent forecloses Wey's argument that absolute immunity provides no protection from subpoenas. The Court of Appeals has repeatedly noted that an SRO's absolute immunity is analogous to sovereign immunity. In *Barbara v. New York Stock Exchange, Inc.*, for example, the court recognized that SROs are entitled to absolute immunity

because they "perform[ ] a variety of regulatory functions that would, in other circumstances, be performed by a government agency" that "would be entitled to sovereign immunity." 99 F.3d 49, 59 (2d Cir. 1996), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016); *accord DL Capital Grp., LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (applying the same reasoning to Nasdaq); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007).

Accordingly, the Second Circuit has sensibly held that sovereign immunity applies to subpoenas to regulators, including third-party subpoenas duces tecum. *See U.S. EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999). In *General Electric*, the court held that sovereign immunity applied to a third-party subpoena issued to the EPA, and that General Electric could therefore enforce the subpoena only by identifying an applicable waiver of sovereign immunity on remand. *See id.* at 597–98; *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) ("Even though the government is not a party to the underlying action, the nature of the subpoena proceeding … is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963))).

Nasdaq is thus on solid ground in citing the holding of other judges of this Court that immunity protects an SRO not just from liability, "but also from the burdens of litigation, including discovery." *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342, 355 (S.D.N.Y. 2015) (internal quotation marks omitted). To hold otherwise would allow thousands of securities litigants each year to burden Nasdaq with subpoenas, hampering Nasdaq in discharging the extensive responsibilities "delegated to it by the Exchange Act."

*D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001); *see also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998), *abrogated on other grounds by Manning*, 136 S. Ct. 1562 (2016). The disruption would arise from both the intrusion of subpoenas into Nasdaq's functions and the expense of responding to subpoenas. And Wey cites no authority for the notion that, even though sovereign immunity indisputably applies to subpoenas, *General Electric*, 197 F.3d at 597, an SRO's absolute immunity—an extension of sovereign immunity principles—does not. *See DL Capital*, 409 F.3d at 99 (absolute immunity is a functional analysis). The Court should reject that contention here.[1]

**2.** Wey is also mistaken in arguing that an SRO's absolute immunity gives way in criminal proceedings. As the Second Circuit has noted, the absolute immunity analysis is driven by "the SRO's *function* as a quasi-governmental authority," not the "identity" or status of the party seeking judicial relief against the SRO. *DL Capital*, 409 F.3d at 99; *see also D'Alessio*, 258 F.3d at 104–05. *D'Alessio*, a civil suit against an SRO, is particularly instructive on this point. There, a criminal defendant in a securities case sued the New York Stock Exchange, claiming that it had caused him "legal difficulties" by providing misleading information about him to the U.S. Attorney and the SEC in connection with their investigations. 258 F.3d at 98. The Exchange asserted its absolute immunity, which D'Alessio argued would entail "an 'erroneous expansion'" of immunity because "'the misconduct alleged in the instant lawsuit also includes improper interpretations of federal securities laws and allegedly duplicitous conduct in connection with providing information about plaintiffs to the [SEC] and the U.S. Attorney's Office.'" *Id.* at 104. The Court of Appeals recognized the functional, SRO-focused nature of

---

[1] Similarly, Wey cannot defeat Nasdaq's immunity by referencing cases in which President Nixon was denied immunity as a principal party and a target of investigation. *See* Opp. 4–5.

4

absolute immunity and held the Exchange immune despite the criminal proceedings in the case. *See id.* at 105–06 ("we look not at the manner in which D'Alessio casts his claims against the NYSE … but rather to the alleged misconduct of the NYSE"). Absolute immunity protects regulators against the burden of diverting resources away from their public mission in order to respond to litigation, and that burden is exactly the same whether the distracting litigation is criminal or civil in nature.

Wey's suggestion that immunity does not bar enforcement of a criminal subpoena cannot be reconciled with the case law or common sense. As noted above, when Nasdaq performs its regulatory functions pursuant to the regulatory system adopted by Congress, Nasdaq effectively takes on the sovereign's immunity for those functions. And courts regularly quash subpoenas in criminal cases on sovereign immunity grounds. *See, e.g.*, *Smith v. Cromer*, 159 F.3d 875, 879−80 (4th Cir. 1998) (collecting cases); *United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992) (quashing a criminal subpoena on tribal sovereign immunity grounds). Notably, Wey does not argue that his constitutional right to defend himself would be violated if he failed to obtain the documents at issue—probably because of the limited value of these materials to his defense. *See infra* Part C.

Applying Nasdaq's immunity in this case would not work an erroneous expansion of absolute immunity, as Wey contends, Opp. 3–5, but rather would avoid limiting immunity in unjustified ways. *See D'Alessio*, 258 F.3d at 104. More urgently, refusing to hold Nasdaq immune would severely impair its ability to perform its important regulatory functions. As the district court noted in *D'Alessio*, an SRO's absolute immunity is "a matter not simply of logic but of intense practicality." 125 F. Supp. 2d 656, 658 (S.D.N.Y. 2000), *aff'd*, 258 F.3d 93 (2d Cir. 2001). In order to perform its regulatory functions, an SRO requires the same protections

from burdensome litigation that accrue to the government. *See id.* ("[T]he Exchange and its employees, in performing these functions, should be accorded the same absolute immunity that would be afforded the [SEC] and its employees in parallel circumstances."). And because a government entity's sovereign immunity protects it from subpoenas in criminal cases, Nasdaq's absolute immunity does the same.

### B.     Nasdaq's Internal Deliberations and Communications Are Privileged

Even if absolute immunity did not shield Nasdaq against Wey's subpoena, Wey cannot overcome Nasdaq's assertions of privilege over its internal, predecisional, deliberative communications related to the Issuers' compliance with securities listing standards.

**1.** The documents that Wey seeks are protected by the deliberative process privilege. Contrary to Wey's suggestion that he seeks only compilations of "purely factual material," Opp. 11, other portions of his opposition and the subpoena itself show that he demands internal "communications by NASDAQ regulatory staff in the context of their administrative review of applications for listing on a stock exchange." Opp. 5; *see also* Subpoena, att. A. These documents fall within the core elements of the deliberative process privilege: they are "predecisional" because they involve Nasdaq's regulatory consideration of listing applications it later ruled upon; and they are "deliberative" because they relate to the process by which Nasdaq formulated and reached decisions on the requirements in question. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999).

Rather than contesting this, Wey throws up more artificial hurdles to Nasdaq's claim for relief from his subpoena. For example, he argues again (Opp. 11) that the criminal nature of his case affects Nasdaq's rights as a third party, such that the deliberative process privilege does not apply in criminal cases. *But see In re Sealed Case*, 121 F.3d 729, 737–40 (D.C. Cir. 1997) (deliberative process privilege applies to grand jury subpoenas); *In re Grand Jury*, 821 F.2d 946,

959 (3d Cir. 1987) (same). Similarly, he contends that only "actual government agencies" may invoke the privilege, Opp. 11 n.7, even though (as discussed above) the law generally treats government entities and SROs alike for such purposes; further, Congress has explicitly placed SROs and government agencies on the same footing in the privilege context. *See* 15 U.S.C. § 78x(f)(3)(A) (providing that "[f]ederal agencies" and "self-regulatory organizations" do not waive their privilege by providing information to the SEC); *cf. DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 224 F.R.D. 133, 138–40 (S.D.N.Y. 2004) (discussing SROs' investigative privilege). Finally, Wey falls back on his argument that the documents sought are simply too important, and Nasdaq's concerns too insubstantial, for the privilege to apply. Opp. 12. But Wey has it backwards, selectively overstating the importance of the documents at issue (*see infra* Part C) and understating Nasdaq's interest in confidentiality. Although the impact of disclosure of any single document in any single case may not be catastrophic for an agency or SRO, the deliberative-process privilege plays a prophylactic role, preserving the ability of regulatory personnel to confer with candor and "debate alternative approaches in private." *Sealed Case*, 121 F.3d at 737. Wey's effort to override Nasdaq's deliberative process privilege should therefore be rejected.

  **2.** Wey unconvincingly differentiates the law enforcement and investigative privileges, Opp. 5, and then disputes that these privileges apply on the same theory: that the documents in question are simply "routine" "administrative" communications unrelated to any investigation. Opp. 5–10. Whatever one calls these privileges, they also bar enforcement of Wey's subpoena.[2]

---

[2] *See, e.g.*, *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (discussing the "law enforcement-investigative privilege"); *Pegoraro v. Marrero*, 281 F.R.D. 122, 130 (S.D.N.Y. 2012) (same). In any event, the only distinction Wey draws between these privileges is, once again, the notion that the investigative privilege does not apply outside the

The standard for an SRO's assertion of the investigative privilege is low. *See DGM Invs.*, 224 F.R.D. at 140 ("Where … a non-governmental self-regulatory entity has asserted the investigatory privilege on the basis of the public interest in preserving the ability of self-regulatory bodies to function effectively [the] requirements appear to have been applied less rigorously, if at all."). The privilege does not require that an investigation be ongoing, *In re City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010), and it applies whenever necessary "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation," *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988).

Nasdaq satisfies these standards. Wey's subpoena demands disclosure of documents related to Nasdaq's enforcement of a listing standard in connection with three listing applications. Subpoena, att. A. As the "Initial Listing Guide" cited in Wey's own opposition (at 8) explains, the application process entails a period of internal review by Nasdaq to investigate and verify the Issuer's compliance with Nasdaq's rules and requirements. *See* Initial Listing Guide at 3, *available at* https://listingcenter.nasdaq.com/assets/initialguide.pdf. And as Nasdaq explained in moving to quash, this investigative process can implicate compliance-monitoring techniques, private investigative sources of information, witnesses, and personnel that must be kept confidential. *See* Memo. in Support of Motion to Quash 7–8; *Department of Investigation*, 856 F.2d at 484. The fact that Nasdaq's investigative activity is not necessarily always directed toward criminal law enforcement is beside the point; Nasdaq's role in investigating violations of

---

civil context. Opp. 9. That is incorrect. *See, e.g.*, *United States v. Djokich*, No. 08-10346, 2016 WL 927145, at *4–5 (D. Mass. Mar. 7, 2016) (applying the investigative privilege in a criminal proceeding).

the federal "rules of conduct and procedure" governing its exchange is sufficient to justify application of the investigative privilege. *In re Adler, Coleman, Clearing Corp.*, No. 95-8203, 1999 WL 1747410, at *3 (S.D.N.Y. Dec. 8, 1999). At any rate, the potential relevance of Nasdaq's investigation to criminal proceedings is proven by the very subpoena under review. Wey's additional suggestion (Opp. 10) that Nasdaq's interest in the confidentiality of its investigative files is overcome by "a showing of necessity" is also unavailing—as discussed just below, no such showing has been made here. Because enforcing the subpoena would undermine the critical interests protected by the deliberative process and investigative privileges, the subpoena should be quashed.

### C. Wey Does Not Carry His Burden of Satisfying Rule 17(c)

Finally, Wey's subpoena flunks the test of Rule 17(c). This test is "exacting," *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 386 (2004), and especially so when the target of the subpoena is a third party, *see Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) ("[C]ourts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs.").[3]

Wey has not carried his burden to satisfy Rule 17(c)'s requirement that the documents sought are relevant and necessary for his trial preparation. Even if Wey were correct that his alleged deception of Nasdaq is a "core piece" of the government's case against him, Opp. 14, he has not shown why Nasdaq's *internal* deliberative documents bear on that allegation: whether Wey deceived Nasdaq will be proven or disproven by what the *Issuers* told Nasdaq, not what

---

[3] Insofar as Wey suggests that this Court's ex parte order authorizing his subpoena definitively determined, without the benefit of any adversary presentation, that the subpoena complies with Rule 17(c), *e.g.*, Opp. 13 & n.10, he is mistaken. The bare existence of Rule 17(c)(2), which authorizes the Court to "quash or modify" subpoenas on motion, repudiates this idea.

9

Nasdaq personnel told each other. *Cf.* Opp. 11 ("The documents sought are relevant to show what NASDAQ's staff knew and what they were actually told regarding the satisfaction of NASDAQ's round-lot shareholder listing requirement by the Issuers.").

And Wey admits that he already has the information he needs. He asserts that (1) the government "has already acknowledged" that the no-gifting rule Wey allegedly evaded through deception has never existed; and (2) "NASDAQ communications already produced by the Government show that the relevant NASDAQ staff identified in the subpoena were actually aware that shareholders of the Issuers had received their stock as gifts." Opp. 13. Assuming that these statements are true, Wey does not need additional Nasdaq material. The external communications already available to Wey sufficiently reflect Nasdaq's state of mind for purposes of determining whether it was a victim of deception; the only other relevant evidence is presumably the Issuers' statements to Nasdaq (and the truth or falsity of those statements), which Wey has, and which Nasdaq in any event offered to produce to Wey. How this inquiry could be affected by purely internal, deliberative communications among Nasdaq staff is far from clear. Wey's bare desire to "complete the record" by obtaining "additional documents on the same topic," Opp. 2, 8, fails to make the showing of necessity required to justify the extraordinary step of ordering a third-party regulator to disclose its internal deliberative files. Wey cannot obtain these documents under Rule 17(c) in the hope of impeaching Nasdaq personnel who may (or may not) be called as witnesses. *See United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.").

Wey's lack of urgency in seeking this disclosure is telling. From the unsealing of his indictment (Dkt. 3) to the issuance of the subpoena, well over a year passed. If Nasdaq's internal

10

files really contained crucial evidence supporting Wey's defense, one would expect him to have requested the files much earlier.[4]

The Court also should not be persuaded by Wey's insistence that he cannot pursue additional documents from the Issuers themselves. Opp. 15. The indictment in this case, as well as filings and exhibits in a civil suit filed against Wey by his former counsel, demonstrate that Wey controls the Issuers and could access documents exchanged between them and Nasdaq. Dkt. 2 ¶¶ 9, 13; Compl. ¶¶ 15, 18–21, 26–57, *Fensterstock & Partners LLP v. CleanTech Innovations, Inc.*, Index No. 151030/2012 (N.Y. Sup. Ct. Mar. 21, 2012) (discussing Wey's control over one Issuer's litigation and other activities). Wey does not directly dispute that here, Opp. 15, and so cannot carry his burden of showing that the material he claims to need is not otherwise procurable. Even if Nasdaq's absolute immunity and privilege did not protect it from Wey's subpoena, therefore, the usual safeguards of Rule 17(c) would.

---

[4] It is not like Wey has never gone to court with Nasdaq before. *See CleanTech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) (dismissing a suit brought by a Wey-affiliated issuer—one of the Issuers identified in the subpoena here—arising out of delisting).

## CONCLUSION

Nasdaq's motion to quash the subpoena should be granted.  If the Court's resolution of these issues would benefit from oral argument, counsel for Nasdaq is prepared to address the Court's questions.

Dated:  March 8, 2017 　　　　　　　　　　　　　Respectfully submitted.

　　　　　　　　　　　　　　　　　　　　　　　　/s/  Michael R. Huston
　　　　　　　　　　　　　　　　　　　　　　　　Michael R. Huston (pro hac vice pending)
　　　　　　　　　　　　　　　　　　　　　　　　Douglas R. Cox
　　　　　　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　　　　　　　　　1050 Connecticut Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20036-5306
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 887-3793
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 530-9604
　　　　　　　　　　　　　　　　　　　　　　　　mhuston@gibsondunn.com

　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Nonparty Nasdaq, Inc.*